# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| ROBERT WALLACE and KIPP CLAYTON, On Behalf of Themselves and All Others Similarly Situated, | ) ) ) ) COLLECTIVE ACTION |
| *Plaintiffs*, | ) ) CASE NO. 5:22-CV-00187-DAE |
| v. | ) ) SENIOR JUDGE EZRA ) MAGISTRATE JUDGE CHESTNEY |
| CANTEX CONTINUING CARE NETWORK LLC, | ) ) JURY DEMAND |
| *Defendant*. | ) ) |

## PLAINTIFFS' OPPOSED MOTION
## TO AUTHORIZE NOTICE PURSUANT TO 29 U.S.C. § 216(b)

**DAVID W. GARRISON**
(admitted *pro hac vice*)
**JOSHUA A. FRANK**
(admitted *pro hac vice*)
BARRETT JOHNSTON MARTIN & GARRISON, LLC
Philips Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: (615) 244-2202
Facsimile: (615) 252-3798
dgarrison@barrettjohnston.com
jfrank@barrettjohnston.com

**PETER B. SCHNEIDER**
SCHNEIDER WALLACE COTTRELL KONECKY LLP
3700 Buffalo Speedway, Suite 300
Houston, TX 77098
Telephone: (713) 338-2560
Facsimile: (866) 505-8036
pschneider@schneiderwallace.com

**TAYLOR A. JONES**
SCHNEIDER WALLACE COTTRELL KONECKY LLP
3700 Buffalo Speedway, Suite 960
Houston, TX 77098
Telephone (713) 338-2560
Facsimile: (415) 421-7105
tajones@schneiderwallace.com

## **MOTION**

Plaintiffs move this Court to authorize notice of this Fair Labor Standards Act ("FLSA") collective action to potential plaintiffs, pursuant to 29 U.S.C. § 216(b). Specifically, Plaintiffs request that the Court:

- find that the following employees are similarly situated: all current and former therapists[1] who have worked at a Cantex Continuing Care Network facility in Texas at any time since September 2, 2019[2] (the "potential plaintiffs");

- require Defendant to produce a list in Excel format containing the names, job titles, and last known mailing addresses, email addresses, and telephone numbers for all potential plaintiffs within 7 days of the order granting this Motion:

- authorize Plaintiffs' counsel to send the attached notice and consent form (Exhibit A) to potential plaintiffs via U.S. Mail, email, and text message;

- provide potential plaintiffs 90 days to submit a consent form to join this action;

- authorize notice half-way through the notice period to those who have not joined.

The parties have engaged in written and document discovery and taken depositions of all four current Plaintiffs, Defendant, and two management level employees of Defendant. The factual record demonstrates that notice is appropriate under *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021) because the challenged policy applies in the same manner to Named Plaintiffs as it does to those they seek to represent.

Pursuant to Local Rule CV-7(g), counsel for Plaintiffs conferred with counsel for Defendant. Defendant opposes the relief requested in this Motion because it contends that

---

[1] Named Plaintiffs and those they seek to represent worked as therapists (*i.e.*, physical therapists, occupational therapists, and speech language pathologists) or therapy assistants (*i.e.*, physical therapy assistants and occupational therapy assistants). For convenience, this brief refers to all therapists and therapy assistants as "therapists" unless specifically stated otherwise.

[2] This date is three years prior to the date from which Plaintiffs seek equitable tolling in their separately-filed motion for that relief.

1

Plaintiffs cannot show that they are similarly situated with potential plaintiffs such that notice is warranted. Pursuant to Local Rule CV-7(f), a proposed order is attached hereto.

## MEMORANDUM IN SUPPORT

Named Plaintiffs Robert Wallace and Kipp Clayton filed this FLSA collective action, seeking to assert their claims against Defendant Cantex Continuing Care Network, LLC's ("Defendant" or "Cantex"), their current employer, together with other similarly situated current and former employees of Defendant who assert claims in this action pursuant to 29 U.S.C. § 216(b). The Named Plaintiffs and those similarly situated are therapists who worked at one or more Cantex skilled nursing facilities in Texas. They challenge a single policy: the requirement that therapists meet productivity goals that are unattainable without working "off the clock." In other words, they challenge a common policy that requires therapists to work "off the clock" without pay in order to comply with Cantex's requirements. And, unlike many off-the-clock collective actions, here there will be a data-driven answer to questions of both liability and damages.

### I.   FACTUAL BACKGROUND

Cantex operates a network of skilled nursing facilities, primarily in the state of Texas.[3] At its skilled nursing facilities, Cantex provides services that include physical, occupational, and speech therapy and employs therapists at its skilled nursing facilities to provide that therapy.[4] Those therapists are the employees whose compensation is impacted by the common policy at issue, and those therapists are who Named Plaintiffs seek to represent in this FLSA collective

---

[3] Cantex Website, https://www.cantexcc.com/ (last accessed Nov. 3, 2022).
[4] *Id.*

action.[5] Their job descriptions and duties are the same in every material respect.[6] They use the same computer system (Rehab Optima / Net Health) to document their work.[7] They clock in and out using the same timekeeping system (Kronos / Paycom).[8] They are subject to the same employment rules.[9] Cantex evaluates their job performance using the same criteria.[10] And, those criteria determine eligibility for raises and advancement.[11]

One of these criteria is meeting productivity requirements.[12] This case centers on these onerous productivity requirements, which therapists cannot meet without working "off the clock" without pay.[13] These productivity requirements are expressed as a percentage: namely, 93% for therapists and 95% for therapy assistants.[14] Productivity is applied to all therapists in the same

---

[5] Complaint (Doc. No. 1); *cf.* Rule 30(b)(6) Deposition of Corporate Designee Angela Smith ("30(b)(6) Smith Depo.") 93:2-96:6 (describing similarities among therapists across facilities with respect to productivity and paid time).

[6] *E.g.*, 30(b)(6) Smith Depo. 93:2-96:6; Deposition of Angela Smith ("Smith Depo.") 145:17-146:18; Deposition of Antonio Johnson ("Johnson Depo.") 295:18-307:4 and Exs. 33-36 (Job Descriptions).

[7] *E.g.*, 30(b)(6) Smith Depo. 112:11-116:11, 150:12-151:4 and Ex. 4 at Interrogatory No. 5.

[8] *E.g.*, 30(b)(6) Smith Depo. 121:5-121:21 and Ex. 4 at Interrogatory No. 6.

[9] *E.g.*, 30(b)(6) Smith Depo. 125:4-126:14; Smith Depo. 161:13-162:25; Johnson Depo. 285:12-288:4 and Exs. 25 (Handbook) and 26 (Compliance, Code of Conduct & Ethics Program).

[10] *E.g.*, 30(b)(6) Smith Depo. 175:12-184:20 and Ex. 5 at Sorrento-Wallace 000456-459, 000665-672 (evaluation forms); Johnson Depo. 107:10-108:23, 149:2-150:18 and Ex. 1 (email exchange about performance evaluations), 170:14-174:25 and Ex. 3 (email exchange about performance evaluations), 217:13-220:6 and Ex. 11 (email exchange about performance evaluations), and 290:2-295:14 and Exs. 29-32 (performance evaluations in which Johnson was involved).

[11] Johnson Depo. 108:17-23, 149:13-150:11, 173:4-177:7.

[12] Johnson Depo. 61:11-63:13, 128:10-129:25, 178:14-182:16 and Ex. 4 (evaluation based on meeting productivity), 253:5-254:8 and Ex. 15, 295:18-307:4 and Exs. 33-36 (discussing job duties requiring all therapists "meet established productivity targets").

[13] *E.g.*, 30(b)(6) Smith Depo. 93:2-96:6, 128:16-130:23 and Ex. 4 at Interrogatory No. 8; Johnson Depo. 61:11-63:13, 128:10-129:25, 178:14-182:16 and Ex. 4 (evaluation based on meeting productivity), 253:5-254:8 and Ex. 15, 295:18-307:4 and Exs. 33-36 (discussing job duties requiring all therapists "meet established productivity targets").

[14] *E.g.*, 30(b)(6) Smith Depo. 93:2-96:6, 128:16-130:23 and Ex. 4 at Interrogatory No. 8, 163:20-164:21; Smith Depo. 86:9-87:12, 110:12-111:17; Johnson Depo. 62:9-23, 129:16-25.

way, regardless of facility or therapy discipline or status as therapist or assistant.[15] And, they have been in place the entire statutory period.[16]

The percentage refers to the percentage of paid time in the facility (*i.e.*, time recorded in the facility for pay purposes) that is "billable."[17] Only time in the presence of the patient is "billable."[18] Outside of direct patient care, *i.e.*, work performed in the physical presence of the patient, virtually every other work activity is non-billable and therefore counts against productivity.[19] The math is illustrative. To meet Cantex' 93% productivity requirement, a Cantex therapist can spend no more than four (4) minutes and twelve (12) seconds on nonbillable activities (7% × 60 minutes = 4.2 minutes or 4m 12s) for every hour on the clock. Similarly, to meet Cantex' 95% productivity requirement, a Cantex therapy assistant can only spend three (3) minutes of every hour on nonbillable activities while on the clock (5% × 60 minutes = 3 minutes).

If these requirements sound unrealistic or unattainable, it is because they are. Consistently meeting these productivity requirements is not possible without working off the clock.[20] Even Defendant's highest level corporate official overseeing therapists, Angela Smith (Senior Director of Rehabilitation and Reimbursement) acknowledges that certain percentages are unreasonable

---

[15] *E.g.*, 30(b)(6) Smith Depo. 93:2-96:6, 128:16-130:23 and Ex. 4 at Interrogatory No. 8, 163:20-164:21; Smith Depo. 86:9-87:12, 110:12-111:17; Johnson Depo. 61:11-63:13, 128:10-129:25, 178:14-182:16 and Ex. 4 (evaluation based on meeting productivity), 253:5-254:8 and Ex. 15, 295:18-307:4 and Exs. 33-36 (discussing job duties requiring all therapists "meet established productivity targets").

[16] 30(b)(6) Smith Depo. 163:20-164:4; Smith Depo. 110:12-111:17; Johnson Depo. 129:8-22.

[17] 30(b)(6) Smith Depo. 76:9-77:4, 78:2-:23, 155:7-19; Johnson Depo. 89:20-94:24.

[18] *E.g.*, Johnson Depo. 74:18-75:4.

[19] *E.g.*, Smith Depo. 116:10-119:24, 121:9-21, 128:4-14; Johnson Depo. 66:25-67:11, 75:2-82:23.

[20] Deposition of Robert Wallace ("Wallace Depo.") 151:11-22, 222:6-225:20, 262:23-263:10; Deposition of Kipp Clayton ("Clayton Depo.") 192:25-196:12; Deposition of Debra Lowery ("Lowery Depo.") 33:5-35:15, 58:12-60:21, 62:10-21, 74:17-75:20, 77:9-16; Deposition of Dawn Riley ("Riley Depo.") 26:17-28:7, 45:23-46:2, 73:6-75:9, 78:23-79:10, 80:16-25.

because they fail to allow sufficient time for "non-billable" activities.[21]

Cantex maintains treatment schedules in Rehab Optima / Net Health that show individual therapists their projected treatment time and their projected "time in facility" to meet their productivity requirement for each shift.[22] This provides therapists with Cantex's road map to track their "on-the-clock" time to meet their productivity requirement each shift.[23] Cantex also uses Rehab Optima / Nethealth to track productivity rates so that individual therapists can see their productivity rate in Rehab Optima / Net Health and to alert therapists when they have failed to meet the requirement by showing their productivity rate in red.[24] Cantex even has Rehab Optima / Nethealth set up to show productivity rates that do not meet the requirement in red on the reports reviewed by management.[25] And, as noted above, meeting productivity is a basic job responsibility that is a factor in annual performance evaluations.[26] In other words, productivity requirements loom over every shift a therapist works and, because they impact evaluations, present a real, practical and logical dilemma for Cantex therapists: either (1) comply with the productivity requirement or (2) get paid for all of their work.[27] Doing both is rarely possible.[28]

Finally, the proof in this collective action is not, and will not be, confined to the testimony of the Plaintiffs (nor to the straightforward logic rooted in simple arithmetic) that Cantex's productivity requirements are impossible to meet consistently without working off-the-clock.

---

[21] Smith Depo. 119:20-121:17, 129:22-143:23.

[22] *E.g.*, WALLACE_000016-000018 (Exhibit B); Johnson Depo. 264:2-265:25 and Ex. 19.

[23] *E.g.*, Wallace Depo. 88:21-90:8; Clayton Depo. 106:19-107:15.

[24] *E.g.*, WALLACE_000016-000018 (Exhibit B); Clayton Depo. 174:21-175:9.

[25] *E.g.*, 30(b)(6) Smith Depo. 161:25-162:16; Smith Depo. 101:2-109:19 and Ex. 2; Johnson Depo. 158:5-9 and Ex. 2.

[26] *See supra* n.12.

[27] *Cf.* Smith Depo. 145:10-16 (therapists can only control time billed with patients and minimizing non-billable time on the clock), 146:15-18 (expectation is that therapists strive to attain productivity within parameters they can control).

[28] *See supra* n.20 and 21.

Here, there are time-stamped, electronic records, user activity reports, that show when therapists accessed Rehab Optima / Nethealth for work.[29] Cantex can export these records for all therapists.[30]

A comparison of these records to therapists' Kronos / Paycom time records will show two things: (1) whether a therapist accessed Rehab Optima / Net Health from a facility while not clocked in for pay purposes; and (2) by examining the difference in the user activity report time-stamps and the Kronos / Paycom clock-out time, the precise, *minimum* amount of time therapists remained at a facility performing work after clocking out for each shift.[31] In other words, the electronic data in these records can be used to determine the critical fact for liability—whether there was off-the-clock work—and to set a floor for damages based on the precise amount of off-the-clock work performed by therapists.

## II.  NOTICE IS APPROPRIATE PURSUANT TO 29 U.S.C. § 216(b)

The key insight of the Fifth Circuit's decision in *Swales v. KLLM Transport Servs., L.L.C.*, is that early discovery is appropriate to determine the proper scope of collective action notice.[32] The goal is to determine "early in the case, whether merits questions can be answered collectively."[33] The amount of discovery that is sufficient varies from case-to-case but "the pleadings and only preliminary discovery" may be sufficient where "the plaintiffs all have the same job description, and the allegations revolve around the same aspect of that job."[34]

However, the purpose of this early inquiry "has nothing to do with endorsing the merits."[35] In fact, even after *Swales*, "the similarly situated determination is not an opportunity for the court

---

[29] Smith Depo. 147:19-152:10, 154:18-20, 157:12-17, and Exs. 3-6.
[30] Smith Depo. 154:18-20, 157:12-17.
[31] *E.g.*, Smith Depo. 165:2-167:24 and Ex. 7
[32] 985 F.3d 430 (5th Cir. 2021).
[33] *Id.* at 442.
[34] *Id.* at 441-42.
[35] *Id.* at 442

to assess the merits of [any] claim by deciding factual disputes or making credibility determinations."[36] Its purpose is simply to "aid[] the district court in deciding whether notice is necessary" and to "ensure[] that any notice sent is proper in scope."[37]

While this represents a change from the two-step, *Lusardi* procedure most courts in this Circuit previously applied, *Swales* does not fundamentally alter the nature of what it means for employees to be "similarly situated."[38] Rather, *Swales* mandates that courts rely on discovery and make the determination early in the case.[39] It also continues to be true that "'similarly situated,' as required for pursue of an FLSA collective action, clearly differs from 'identically situated.'"[40]

### A.  Notice to all Cantex therapists in Texas is appropriate.

Here, notice to all Cantex therapists in Texas is appropriate because "the plaintiffs all have the same job description, and the allegations revolve around the same aspect of that job."[41] Cantex therapists all work under the same, across-the-board productivity requirements, in similar skilled nursing facilities, performing the same job under the same management hierarchy and the same employment policies. Their job performance is evaluated in the same way, using the same documentation. Their clinical treatment time is recorded in the same way, using the same system (Rehab Optima / Net Health), and their time for pay purposes is recorded using the same system (Kronos). In short, the factual and employment settings in which the therapists work are if not

---

[36] *Segovia v. Fuelco Energy LLC*, No. 5:17-cv-1246-JKP, 2021 WL 2187956, at *7 (W.D. Tex. May 28, 2021) (internal quotations and citation omitted)).

[37] *Swales*, 985 F.3d at 442.

[38] *See Segovia*, 2021 WL 2187956, at *7 (*Swales* "does not alter the meaning of 'similarly situated' as honed and considered through judicial decisions since the phrase first appeared undefined in the statute.").

[39] *See id.* at *10 ("*Swales* did not change the inquiry as to whether an FLSA action may proceed as a collective action. It instead changed when that determination should be made.").

[40] *Id.* at *8.

[41] *Swales*, 985 F.3d at 441-42.

identical, certainly similar.

The allegations here all revolve around precisely the same aspect of the job: namely, productivity requirements. The Plaintiffs testified that it was only possible to meet the productivity requirements without off-the-clock work under ideal conditions that rarely occurred. Defendant's Director of Rehabilitation and Reimbursement, Angela Smith, largely agreed, noting that there are certain percentages that would be unreasonable. And, whether or not time was worked off the clock is not meaningfully up for debate. Records from Rehab Optima / Net Health demonstrate that the four current Plaintiffs accessed the system to perform work from their facility after having clocked out of Kronos. These same records can be used to reach the same conclusion and even to measure with precision the minimum amount of off-the-clock time therapists worked off-the-clock.

### B. Other courts, including in the Fifth Circuit, have certified similar cases.

The allegations made in this case are not unique or novel. In *Loy v. Rehab Synergies, LLC*, the Southern District of Texas likewise authorized company-wide notice to therapists and therapy assistants based on essentially the same allegations.[42] In Loy, the district court refused to decertify the collective action, specifically conducting its analysis under *Swales*, and the case proceeded to trial collectively.[43] Likewise, in *Girolamo v. Community Physical Therapy & Assocs., Ltd.*, the Northern District of Illinois conditionally certified a companywide collective of therapists and therapist assistants who alleged that they had worked off- the-clock on non-billable tasks in order to meet that defendant's 90% productivity standard.[44] And, in the Northern District of California, the parties in such a case reached, and the district court approved, a Rule 23 class action settlement

---

[42] No. 7:18-cv-4, 366 F. Supp. 3d 847 (S.D. Texas 2019).
[43] *See Loy v. Rehab Synergies, LLC*, No. 7:18-cv-4, 2021 WL 3931926, at *8-*14 (S.D. Texas Sept. 2, 2021) (expressly performing an analysis under the Fifth Circuit's *Swales* decision).
[44] No. 1:15-cv-02361, 2016 WL 3693426 (N.D. Ill. July 12, 2016).

of claims stemming from off-the-clock work performed by therapists to meet onerous productivity requirements in *Stonehocker v. Kindred Healthcare Operating, LLC*, finding the requirements of Rule 23 satisfied by the settlement class.[45] Plaintiffs make essentially identical allegations here.

District courts also frequently grant conditional certification where, as here, plaintiffs put forward evidence that productivity requirements make off-the-clock work inevitable.[46] As noted by the court in *Shoots v. iQor Holdings US Inc.*, "evidence concerning an employer's productivity requirements" is relevant "when evaluating whether the plaintiffs and opt-in plaintiffs were subject to a common policy."[47] Similarly, in *Brennan v. Qwest Communications International, Inc.*, the court denied decertification where the plaintiff technicians "claimed that Qwest's productivity expectations forced them to work off the clock before and after their shifts."[48] Ultimately, the *Brennan* court found the named and opt-in plaintiffs "share similar factual and employment

---

[45] No. 4:19-cv-02494-YGR, 2021 WL 1643226, at *3-*4 (N.D. Cal. Apr. 27, 2021). The *Stonehocker* court described the allegations in detail in its denial of summary judgment. *Stonehocker v. Kindred Healthcare Operating, LLC*, No. 19-cv-02494-YGR, 2019 WL 4542466, at *1 (N.D. Cal. Sept. 19, 2019). There the plaintiffs were therapists subject to an 87% productivity requirement. *Id.*

[46] *Shoots v. iQor Holdings US Inc.*, 325 F.R.D. 253 (D. Minn. 2018) (denying employer's motion to decertify collective 3,500 opt-in plaintiffs); *Brennan v. Qwest Communications International, Inc.*, No. 07-2024-ADM/JSM, 2009 WL 1586721 (D. Minn. June 4, 2009) (refusing to decertify collective action where plaintiffs challenged common policy of productivity requirements resulting in off-the-clock work); *Sharpe v. APAC Customer Servs., Inc.*, No. 09-cv-329, 2010 WL 135168, at *5-*7 (W.D. Wisc. Jan. 11, 2010) (conditionally certifying companywide class of call center employees subject to common performance goal of only 0.5% variance between time entries and scheduled shift "to maximize the amount of time billable to defendant's clients"); *Fisher v. Michigan Bell Telephone Co.*, 665 F. Supp. 2d 819, 822-23, 827 (E.D. Mich. 2009) (conditionally certifying collective covering five locations where plaintiffs alleged they were required "to meet a strict "adherence" requirement, which is a measure of how closely the work activity of each hourly employee taking calls from customers matches his or her scheduled tour [*i.e.*, shift]"); *Titchenell v. Apria Healthcare Inc.*, No. 11-563, 2011 WL 5428559, at *4 (E.D. Pa. Nov. 8, 2011) (conditionally certifying nationwide collective where plaintiff alleged she and collective members worked off-the-clock to meet productivity demands which presented them all with "the same choice between failing to meet performance objectives or working off the clock").

[47] 325 F.R.D. at 272-73.

[48] *Shoots*, 325 F.R.D. at 272-73 (citing *Brennan*, 2009 WL 1586721, at *2).

settings because each was subject to minimum QJD ["Quality Jobs per Day," *i.e.*, productivity] standards and other requirements."[49] Importantly, in both *Shoots* and *Brennan*, the courts were persuaded that evidence of common productivity requirements was sufficient to deny decertification under the more stringent, stage-two analysis.

### C. The Court should adopt Plaintiffs' proposed notice procedures.

First, Plaintiffs' proposed notice is modeled on similar FLSA notices approved by this and other courts. Second, Plaintiffs' proposed procedure is appropriate. Specifically, notice by U.S. mail, email, and text message is appropriate.[50] A 90-day notice period is appropriate.[51] And, resending notice half-way through the notice period to those who have not joined is appropriate.[52] Third, the production of names, job titles, and last known mailing addresses, email addresses, and telephone numbers for all potential plaintiffs by Defendant is appropriate.[53]

## III. CONCLUSION

For the foregoing reasons, all Cantex therapists in Texas are similarly situated such that notice should be authorized using the procedures proposed by Plaintiffs.

---

[49] *Brennan*, 2009 WL 1586721, at *5.

[50] *E.g.*, *Butler v. TFS Oilfield Services, LLC*, No. 5:16-cv-1150-FB, 2017 WL 7052879, at *6-7 (W.D. Texas Sept. 26, 2017); *Mendoza v. AFO Boss, LLC*, 402 F. Supp. 3d 355, 361 (W.D. Texas 2019); *Ortiz v. Trinidad Drilling, LLC*, No. 5:20-cv-503-OLG, 2020 WL 6324393, at *2 (W.D. Texas Oct. 28, 2020).

[51] *E.g.*, *Gonzales v. Lone Star Wireline Servs., LLC*, No. 5:15-cv-882-DAE, 2016 WL 7616700, at *4 (W.D. Texas Apr. 6, 2016); *Butler*, 2017 WL 7052879, at *7; *Soto v. Marquez Construction & Maintenance, LLC*, No. 7:20-cv-101-DC-RCG, 2021 WL 3832836, at *3 (W.D. Texas Apr. 9, 2021).

[52] *E.g.*, *Butler*, 2017 WL 7052879, at *7; *Ortiz*, 2020 WL 6324393, at *2; *Bridgewater v. Ges Gladiator Energy Services Texas, LLC*, No. 5:15-cv-975-RP, 2015 WL 13805947, at *3 (W.D. Texas Dec. 22, 2015).

[53] *E.g.*, *Vega v. Point Security, LLC*, No. 1:17-cv-49-LY, 2017 WL 4023289, at *5 (W.D. Texas Sept. 13, 2017); *Mendoza*, 402 F. Supp. 3d at 361; *Butler*, 2017 WL 7052879, at *6-7.

Date: November 4, 2022

Respectfully submitted,

/s/ David W. Garrison
**DAVID W. GARRISON (TN Bar No. 24968)\***
**JOSHUA A. FRANK (TN Bar No. 33294)\***
BARRETT JOHNSTON MARTIN & GARRISON, LLC
Philips Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: (615) 244-2202
Facsimile: (615) 252-3798
dgarrison@barrettjohnston.com
jfrank@barrettjohnston.com

**PETER B. SCHNEIDER**
SCHNEIDER WALLACE COTTRELL KONECKY LLP
3700 Buffalo Speedway, Suite 300
Houston, TX 77098
Telephone: (713) 338-2560
Facsimile: (866) 505-8036
pschneider@schneiderwallace.com

**TAYLOR A. JONES**
SCHNEIDER WALLACE COTTRELL KONECKY LLP
3700 Buffalo Speedway, Suite 960
Houston, TX 77098
Telephone (713) 338-2560
Facsimile: (415) 421-7105
tajones@schneiderwallace.com

\*Admitted *pro hac vice*

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

  I hereby certify that a copy of *Plaintiffs' Opposed Motion to Authorize Notice Pursuant to 29 U.S.C. § 216(b)* was filed electronically with the Clerk's office by using the CM/ECF system and served electronically upon the parties as indicated below through the Court's ECF system on November 4, 2022:

**Nicole Susanne LeFave**
Littler Mendelson, P.C.
100 Congress Avenue Ste 1400
Austin, TX 78701
Telephone: 512-982-7261
Fax: 512-982-7248
Email: NLeFave@littler.com

**Jeremy W. Hawpe**
Littler Mendelson, P.C.
2001 Ross Avenue - Suite 1500
Dallas, TX 75201-2931
Telephone: (214) 880-8147
Fax: (214) 880-0181
Email: jhawpe@littler.com

*Attorneys for Defendant*

            /s/ David W. Garrison
            DAVID W. GARRISON
            **BARRETT JOHNSTON**
              **MARTIN & GARRISON, LLC**