IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ROBERT WALLACE, KIPP CLAYTON, DAWN M. RILEY, DEBRA LOWERY, § § § § *Plaintiffs*, § § vs. § § CANTEX CONTINUING CARE § NETWORK LLC, § § *Defendant*. § | SA-22-CV-00187-DAE |

### ORDER

Before the Court in the above-styled cause of action are Plaintiffs' Opposed Motion to Authorize Notice Pursuant to 29 U.S.C. § 216(b) [#27] and Plaintiffs' Opposed Motion for Equitable Tolling of the Statute of Limitations of Potential Plaintiffs [#28]. The Court held a hearing on the motions on December 8, 2022, at which counsel for all parties appeared via videoconference. For the reasons that follow, the Court will **GRANT IN PART** Plaintiffs' Plaintiffs' Opposed Motion to Authorize Notice Pursuant to 29 U.S.C. § 216(b) and **DENY** Plaintiffs' Opposed Motion for Equitable Tolling of the Statute of Limitations of Potential Plaintiffs.

### I. Background

This putative collection action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* Plaintiffs Robert Wallace and Kipp Clayton seek unpaid overtime compensation on behalf of themselves and all others similarly situated from their employer, Cantex Continuing Care Network LLC ("Defendant"). (Compl. [#1], at ¶¶ 1–2.) Defendant provides transitional and residential healthcare services in approximately 36 skilled nursing facilities throughout the

1

State of Texas and has other facilities in Louisiana and New Mexico. (*Id.* at ¶ 9.) Wallace is a physical therapist, and Clayton is an occupational therapist; both perform their work for Defendant at the Sorrento Skilled Nursing Facility in San Antonio, Texas. (*Id.* at ¶¶ 11–16.) However, Clayton also works on an as-needed basis at two other facilities, Coronado and Windermere. (Clayton Dep. [#32-5], at 49:2–6.)

Two additional employees of Defendant, Dawn M. Riley and Debra Lowery, have opted into the suit. (Consents to Join [#18, #21].) These opt-in Plaintiffs also work or worked at the Sorrento facility. (Riley Dep. [#32-7], at 12:1–6; Lowery Dep. [#32-8], at 10:4–6.) Lowery worked at Coronado on a part-time basis prior to her placement at Sorrento, and Riley also worked on two occasions at the Coronado facility when the facility was understaffed. (Riley Dep. [#32-7], at 20–22; Lowery Dep. [#32-8], at 10:7–13.)

Plaintiffs allege that Defendant's therapists, which include physical therapists, occupational therapists, speech language pathologists, and therapist assistants, regularly work off-the-clock hours beyond their 40-hour workweek but do not get paid for these overtime hours. (Compl. [#1], at ¶ 19.) Plaintiffs contend that this off-the-clock work is necessary to comply with Defendant's productivity requirements. (*Id.* at ¶¶ 20–21.)

Plaintiffs have moved the Court to authorize notice of this action to potential plaintiffs pursuant to 29 U.S.C. § 216(b). Plaintiffs separately move for an order equitably tolling the statute of limitations for potential plaintiffs as of September 2, 2022, until the Court's ruling on the motion for notice or the close of the FLSA notice period, whichever is later. The motions are ripe for review.

## II.  Motion for Notice

Plaintiffs' motion seeks an order of the Court authorizing notice to the following employees:

> All current and former therapists who have worked at a Cantex Continuing Care Network facility in Texas at any time since September 2, 2019.[1]

Plaintiffs define "therapists" to include physical therapists, occupational therapists, and speech language pathologists, as well as physical therapy and occupational therapy assistants.  Plaintiffs contend that notice is appropriate under *Swales v. KLLM Transportation Services, L.L.C.*, 985 F.3d 430 (5th Cir. 2021), because they challenge a single policy applicable to all therapists—the requirement that therapists meet productivity goals that are unattainable without working "off-the-clock."

*Swales* directs district courts to "rigorously scrutinize the realm of 'similarly situated' workers" and requires that courts "do so from the outset of the case, not after a lenient, step-one 'conditional certification.'" *Id.* at 434.  In doing so, a district court "should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.'" *Id.* at 441.  The district court should then "authorize preliminary discovery accordingly." *Id.*  This "similarly situated" inquiry necessarily considers whether merits questions can be answered collectively, despite the Supreme Court's admonition that courts "cannot signal approval of the merits" in doing so. *Id.* at 434, 442.  Plaintiffs bear the burden of establishing that the proposed class is similarly situated. *Id.* at 443.  A district court has broad discretion in deciding whether and to whom to issue notice for purposes of litigation management. *Id.*

---

[1] This date is three years prior to the date from which Plaintiffs seek equitable tolling in their motion for that relief.

Prior to referring Plaintiffs' motions to the undersigned, the District Court approved the parties' agreement to conduct an initial phase of discovery relating to notice. The parties engaged in written and document discovery and took depositions of all four current Plaintiffs, Defendant, and two of Defendant's management-level employees. Applying *Swales* to the evidence before the Court, the Court finds that Plaintiffs have not satisfied their burden to demonstrate that all therapists are similarly situated, regardless of facility, statewide.

The evidence before the Court establishes the following. Defendant's job descriptions for the occupational therapist, physical therapist, and speech pathologist positions are each the same, regardless of the skilled nursing facility to which the therapists are assigned. (Johnson Dep. [#27-6], at 296:18–297:3.) Occupational and physical therapists and speech pathologists are responsible for screening, evaluating, and treating patients; maintaining patient records; communicating with other health team members regarding a patient's progress; participating in patient care conferences and weekly rehabilitation and care coordination meetings; recording clinical documentation and daily treatments; and meeting established productivity targets. (OT Job Description [#27-6], at 259–60; PT Job Description [#27-6], at 264–65; Speech Pathologist Job Description [#27-6], at 279–80.) Therapy assistants are responsible for treating patients as directed by the physical or occupational therapists; recording treatments; participating in various training programs; assisting with cleaning and maintaining treatment areas; and meeting established productivity targets. (Assistant PT Job Description [#27-6], at 269–70; Assistant OT Job Description [#27-6], at 275–276.) The job descriptions for assistants do not differ across facilities either. (Johnson Dep. [#27-6], at 296:18–297:3.)

Additionally, all therapists and therapy assistants are subject to the same productivity and billable-time requirements. (Smith 30(b)(6) Dep. [#27-4], at 94:14–96:2.) Therapy assistants are

4

subject to a 95% productivity requirement, and therapists are subject to a 93% productivity requirement.  (Smith Dep. [#27-5], at 146:10–14; Johnson Dep. [#27-6], at 297:20–298:1.)  All therapists, regardless of facility, clock in and out using the same timekeeping system, initially Kronos and now Paycom.  (*Id.* at 120:5–18.)  Therapists across all facilities are required to document their treatment of patients and their billable time in the same software application, known as Rehab Optima/Net Health.  (Smith 30(b)(6) Dep. [#27-4], at 112:11–114:21.)  This application calculates each individual therapist's productivity rate, which is the therapist's billable time as a percentage of time clocked into work in the facility.  (*Id.* at 150:2–151:12.)  All therapists are also subject to the same Therapist Employee Handbook, which contains policies related to timekeeping, work schedules, performance evaluations, and employee discipline, among other topics.  (*Id.* at 125:8–14; Handbook [#27-6], at 144–221.)  Finally, although performance evaluations are primarily done at the facility level, productivity is a component of the performance evaluation for all therapists, which in turn is one component of evaluating eligibility for raises.  (Smith 30(b)(6) Dep. [#27-4], at 179:6–10; Johnson Dep. [#27-6], at 107:14–109:1; Performance Evaluation [#27-4], at 63–65.)

All four Plaintiffs in this case testified in their depositions that they were or are unable to satisfy the productivity metrics in place without working off the clock.  (Wallace Dep. [#27-7], at 224:10–225:20; Clayton Dep. [#27-8], at 107:3–9, 192:25–193:7; Lowery Dep. [#27-9], at 58:17–60:21; Riley Dep. [#27-10], at 45:23–46:2.)  And all four Plaintiffs testified to their personal knowledge, based on conversations and observations, of other therapists at the Sorrento facility working off the clock to reach their productivity goals; though not all Plaintiffs could name any additional therapists outside of those who have already joined this suit.  (Clayton Dep.

[#32-5], at 187:3–11; Wallace Dep. [#32-6], at 167:11–17; Lowery Dep. [#32-7], at 15:16–16:25; Riley Dep. [#32-8], at 31:6–32:13.)

Plaintiffs could not, however, testify based on any personal knowledge of off-the-clock work outside the Sorrento facility. Wallace testified that he could not name any therapist outside of Sorrento who worked at a different facility who, based on his personal knowledge, worked off the clock. (Wallace Dep. [#32-6], at 167:20–25.) Clayton testified that he has not personally observed any other therapist at Coronado or Windermere (where he works on an as-needed basis) work off the clock and that he lacks personal knowledge of off-the-clock work in other facilities. (Clayton Dep. [#32-5], at 49:7–50:6.) When Riley was questioned about her knowledge of therapists who worked off the clock at other facilities, she conceded that she had not had any conversations regarding this topic. (Riley Dep. [#32-8], at 32:24–33:2.) Finally, Lowery testified that she never had a conversation with anyone personally about working off the clock at any other facility besides Sorrento, even if she believed there were others. (Lowery Dep. [#32-8], at 21:6–16, 32:24–33:2.) The general testimony of Plaintiffs is consistent; they believe that the "simple math" makes it impossible to satisfy performance metrics without working off the clock, but they lack personal knowledge as to whether this off-the-clock work actually occurs anywhere but Sorrento. (Riley Dep. [#32-8], at 64:12–18; Wallace Dep [#32-6], at 267:19–268:3; Clayton Dep. [#27-8], at 187:24–189:13, 192:25–194:22.)

Based on this testimony, Plaintiffs have not satisfied their burden to demonstrate the proposed class—*all* therapists statewide, regardless of facility—are similarly situated with respect to the pressures of performing off-the-clock work. Plaintiffs' personal knowledge of the effects of Defendant's productivity metrics (and the allegation that this policy requires off-the-clock work that is performed without pay in violation of the FLSA) is limited to the Sorrento

facility, the facility where Plaintiffs have worked. The Court declines to issue notice to all therapists in all facilities throughout Texas without additional evidence regarding actual incidences of off-the-clock work at these facilities demonstrating Plaintiffs and the proposed state-wide class are similarly situated.

The Court is not persuaded by Plaintiffs' argument in their reply brief that the mere fact that productivity threshold percentages for individual therapists are the same across-the-board at all facilities means that the proposed class is sufficiently similarly situated to justify the issuance of notice and collective treatment of this lawsuit. Defendant has presented the Court with evidence that highlights certain differences between the facilities that could present practical challenges to trying this case on a facility-wide collective basis. The evidence shows that each facility employs its own staff, including a Facility Executive Director (ED). (Smith Decl. [#32-1], at ¶ 4.) Additionally, the Cantex network employs Regional Directors of Rehabilitation, who support and guide Facility Directors of Rehabilitation and the Facility EDs. (*Id.* at ¶ 5.) In addition to the productivity metrics imposed on individual therapists, each facility is advised to maintain an overall 90% productivity rate for its rehabilitation department. (*Id.* at ¶ 6.) An individual facility's dynamics affect its productivity and how its productivity goals are satisfied. (Johnson Decl. [#32-2], at ¶¶ 9.)

Plaintiffs also conceded that it is possible to achieve more than 100% productivity by conducting group and concurrent treatment and that this is one way that individual clinicians can increase their productivity. (Clayton Dep. [#32-5], at 114:24–118:16; Wallace Dep. [#32-6], at 122:19–123:24; Riley Dep. [#32-8], at 131:24–132:5.) For example, if a clinician sees three patients in a group setting for 30 minutes in the span of one hour, the productivity for that hour would be 150 percent. (Johnson Decl. [#32-2], at ¶ 8.) Yet some facilities have a patient

population that is suitable for group or concurrent treatment, while others do not.  (*Id.* at ¶ 9; Wallace Dep. [#32-5], at 156:23–157:1.)  Additionally, in some facilities, such as those managed by a Speech Language Pathologist, productivity metrics might be relaxed, as the demand for this specialized type of treatment is generally low.  (Johnson Decl. [#32-2], at ¶ 10.)

Finally, the Court agrees with Defendant that the question of whether Defendant had actual or constructive knowledge of Plaintiff's off-the-clock work will be relevant to the merits of this suit.  Evaluating this question on a facility-wide basis will be difficult because the issue is context-specific and will hinge on the testimony of individual plaintiffs and their various regional directors and supervisors.  *See Fairchild v. All. Am. Check Cashing, Inc.*, 815 F.3d 959, 964 (5th Cir. 2016) (An employee "cannot prevail on an FLSA claim if that 'employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of overtime work.'"); *see also Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995) (acknowledging exception to notice requirement if employer "knew or had reason to believe" that reported hours were inaccurate).

Plaintiffs testified that they did not inform anyone at Sorrento about their off-the-clock work.  (Clayton Dep. [#32-5], at 157:23–158:2; Wallace Dep. [#32-6], at 119:18–-23; Riley Dep. [#32-8], at 81:17–21.)  And Plaintiffs testified that they had not been disciplined for failing to meet productivity metrics.  (Clayton Dep. [#32-5], at 180:20–181:1; Riley Dep. [#32-8], at 94:8–10.)  Nor is there evidence that any Plaintiff had first-hand knowledge of discipline of other therapists on this basis either.  (Riley Dep. [#32-8], at 130:17–24.)  Thus, Plaintiffs will take the position at trial that Defendant had constructive knowledge of their unpaid off-the-clock work based on the mere fact that unreasonable productivity metrics are in place and based on User Activity Reports in their records of patient treatment in Rehab Optima/Net Health and their time

records in Kronos/Paycom. This argument may ultimately fail under governing case law, but is nonetheless suitable for collective treatment if limited to the Sorrento facility, as the evidence will be limited to the same supervisors.

In summary, in light of the lack of evidence of consistent practice regarding off-the-clock work throughout Defendant's facilities, the Court will issue notice only to those therapists staffed at the Sorrento facility. Plaintiffs have satisfied their burden to demonstrate that all therapists at Sorrento were subject to the same facility-based productivity metric, in addition to the individual therapist's productivity benchmarks; that all therapists at Sorrento have the same supervisors and chain of command; and that all therapists at Sorrento are subject to the same facility conditions, which dictate whether or not concurrent or group treatment is available to increase productivity.

Having concluded that the Court will issue notice to all therapists at the Sorrento Skilled Nursing Facility in San Antonio, the Court turns to the substance of the proposed notice attached to Plaintiffs' motion. Defendant objects to various aspects of the notice, arguing the following: (1) notice should be by mail only, not e-mail and text message, and no reminder notice shall be issued; (2) potential plaintiffs should have only 30 days, not the proposed 90, to return their consent forms; (3) the notice should explain to prospective plaintiffs that they have the right to obtain their own counsel; and (4) the notice should explain to putative opt-in plaintiffs that they may be required to travel to give their depositions or provide testimony and, if they do not prevail, they may be responsible for costs and expenses.

The Court finds that the provision of notice via U.S. mail, e-mail, and text message is warranted. As other courts have recognized, email has become "saturated and unwieldy." *See Thrower v. UniversalPegasus, Int'l Inc.*, 484 F. Supp. 3d 473, 490 (S.D. Tex. 2020). Our mailboxes are inundated daily with unwanted messages and advertisements, making it ever

difficult to notice the few messages that actually contain important information. *Id.* Text messages are less likely to be overlooked by some potential plaintiffs, and so notice by text, U.S. mail and e-mail is more likely to facilitate actual notice of this lawsuit to a broader group of workers. The Court will, however, default to the 60-day notice period that most courts appear to embrace, rather than the requested 90 or 30 days. A longer notice period is not warranted, considering the small size of the notice class. A reminder notice via text message and email may be sent at 30 days, but a reminder by U.S. mail is not warranted. The substance of the notice should be modified to explain the right to obtain separate counsel and that opt-in plaintiffs may be required to travel to give their depositions or provide testimony and, if they do not prevail, they may be responsible for costs and expenses.

Finally, Defendant also wishes the notice to include a modified and more limited description of the nature of the claims at issue in this case as follows: "They allege that they performed work off the clock without pay in violation of the Fair Labor Standards Act. This lawsuit seeks to recover unpaid wages. Cantex denies the allegations in the lawsuit and denies that the Plaintiffs and any other therapists and therapy assistants are entitled to back overtime pay." Plaintiffs' description of their claims includes reference to the specific productivity requirements at issue and that Plaintiffs allege the productivity metrics cannot be met without working off the clock without pay. The Court will allow Plaintiffs to send the notice as proposed with respect to a description of their claims to give prospective plaintiffs a more complete factual picture of the underlying basis of this lawsuit.

### III.  Motion for Equitable Tolling

Plaintiffs also ask the Court to equitably toll the statute of limitations of potential plaintiffs as of September 2, 2022, until the close of the FLSA notice period. Plaintiffs argue

that they would have filed their motion seeking notice on September 2, 2022 (the parties' agreed deadline to do so), but for delays in Defendant's production of documents and witnesses for deposition. The Court will deny the motion.

To establish a basis for equitable tolling of a statute of limitations, a litigant must establish "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (quotation and citation omitted). The party invoking equitable tolling bears the burden of justifying the need for equitable tolling of the limitations period, but the decision to ultimately invoke equitable tolling in a particular instance is left to the discretion of the district court, subject to appellate review only for abuse of discretion. *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002); *United States v. Caldwell*, 586 F.3d 338, 341 (5th Cir. 2009).

Plaintiffs have not satisfied their burden, and the Court declines to exercise its discretion to equitably toll the statute of limitations of future opt-in plaintiffs in this suit. The record demonstrates that Plaintiffs filed this action on February 28, 2022, and the Scheduling Order imposed a deadline of September 2, 2022, to file their motion for notice. Due to disagreements over the exchange of discovery and the need for supplemental production, Plaintiffs ultimately jointly stipulated to an extension of this deadline and filed their motion on November 4, 2022, two months later. The record does not contain any evidence of any bad faith on the part of Defendant in the discovery process, any inordinate delay in production, or other dilatory tactics. Rather, the record details common disagreements that arise in the scope of the exchange of discovery and the meet-and-confer process to resolve them. This does not constitute an

extraordinary circumstance getting in the way of Plaintiffs' filing of their motion for notice, especially in light of Plaintiffs' stipulation to the new deadline for filing their motion.

**IT IS THEREFORE ORDERED** that Plaintiffs' Opposed Motion to Authorize Notice Pursuant to 29 U.S.C. § 216(b) [#27] is **GRANTED IN PART AND DENIED IN PART** as follows:

- Plaintiffs may send notice to the following group of similarly situated employees of Defendant:

  All current and former therapists who have worked at Sorrento Skilled Nursing Facility in San Antonio, Texas, at any time since September 2, 2019. "Therapists" is defined to include both therapists (i.e., physical therapists, occupational therapists, and speech language pathologists) and therapy assistants (i.e., physical therapy assistants and occupational therapy assistants).

- Defendant shall produce a list in Excel format containing the names, job titles, and last known mailing addresses, email addresses, and telephone numbers for all potential plaintiffs within **seven days** of this Order.

- Plaintiffs' proposed notice and consent form should be modified as set forth in this Order.

- Plaintiffs' counsel shall send the proposed notice and consent form (as modified by this Order) to potential plaintiffs via **U.S. Mail** (along with a business reply envelope), **email, and text message**.

- Potential plaintiffs shall have **60 days** to submit a consent form to join this action and the timeliness of any consent form shall be determined by the postmark (for those returned by U.S. mail) or the date of submission for those returned by electronic means.

- Plaintiffs' counsel shall resend the same notice via text and e-mail half-way through the notice period as a reminder to those who have not joined.

- Plaintiffs' counsel shall file with the Court a status report within **seven days** of sending the initial notice to the potential plaintiffs advising the Court of the date on which the notice was sent and the deadline for potential plaintiffs to submit a consent form.

**IT IS FURTHER ORDERED** that Plaintiffs' Opposed Motion for Equitable Tolling of the Statute of Limitations of Potential Plaintiffs [#28] is **DENIED**.

SIGNED this 4th day of January, 2023.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE